**Elmer SUNDSTROM, Plaintiff,**

**v.**

**VILLAGE OF ARLINGTON HEIGHTS, Board of Fire and Police Commissioners of Village of Arlington Heights, Robert Schuldt, Harold Pollard and Bruce Rodewald, Defendants.**

No. 92 C 56.

United States District Court, N.D. Illinois, E.D.

June 16, 1993.

1144

Joel A. D'Alba, Chicago, IL, for plaintiff.

Jack M. Siegel, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Lieutenant Elmer Sundstrom ("Sundstrom") of the Fire Department ("Department") of the Village of Arlington Heights ("Village") claims that defendants—Village itself, its Board of Fire and Police Commissioners ("Board") and three individuals—denied Sundstrom's promotion to the rank of Department's Captain in retaliation for his airing complaints about Department to a reporter. Sundstrom's 42 U.S.C. § 1983 ("Section 1983") Complaint asserts that such conduct violated his First Amendment[1] and due process rights.

All defendants have moved for summary judgment under Fed.R.Civ.P. ("Rule") 56.[2] For the reasons stated in this memorandum

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the First Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties). Because inattention to that distinction can sometimes lead to some confusion in the analytical approach to Section 1983 cases, it is always desirable to keep the conceptual difference in mind throughout the discussion (see *Marshall v. Allen*, 984 F.2d 787, 789 n. 1 (7th Cir. 1993)).

2. Familiar Rule 56 principles impose on defendants as movants the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to nonmovant Sundstrom

opinion and order, their motion is granted in principal part and is denied only as to one claim (the First Amendment claim) against one defendant (Village's Fire Chief Bruce Rodewald ("Rodewald")).

### Facts[3]

Sundstrom joined Department as a firefighter in 1983 and became a Lieutenant in February 1989 (D. 12(M) ¶ 10). From February through April 1989 he was trained as a fire prevention officer, and in May 1989 he became responsible for inspection of the Arlington International Racecourse (D. 12(M) ¶ 11; P. 12(N) Supp. ¶ 2). Sundstrom's examination of the Racecourse revealed over 700 violations (P. 12(N) Supp. ¶ 2).

In June 1991 Captain Frank Woodruff ("Woodruff") announced his retirement from Department effective November 21, 1991 (D. 12(M) ¶ 17). That led to the Village Manager's request that Board fill the anticipated vacancy by promotion (*id.* ¶ 18). Sundstrom wanted that Captaincy.

Before this opinion turns to Sundstrom's application for that promotion and its eventual denial, a brief explanation of Board's promotional procedure is in order. Under Illinois law Board has the authority to select persons for promotion, with its choice required to be made from among the three highest ranking candidates (sometimes re-

(*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (citations omitted)).

3. This District Court's General Rule ("GR") 12(M) requires every Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each of those facts. GR 12(N) requires the nonmoving party to respond point by point, with citations to the record in support of (1) any claimed contest of the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert. Defendants' GR 12(M) statement will be cited "D. 12(M) ¶ —," while Sundstrom's GR 12(N) response will be cited "P. 12(N) ¶ —" and his supplemental response will be cited "P. 12(N) Supp. ¶ —." Whenever Sundstrom has simply admitted any portion of the GR 12(M) statement, only the latter will be cited here. Finally, whenever Sundstrom has set out any additional factual assertions in his P. 12(N) and P. 12(N) Supp. responses, the principle stated in n. 2 calls for those to be treated as true for purposes of the present motion.

ferred to as a "rule of three," discussed in this Court's opinion in *Houk v. Village of Oak Lawn,* 647 F.Supp. 710, 716–17 (N.D.Ill. 1986)). Here is the relevant portion of 65 ILCS 5/10–2.1–15:

> The board, by its rules, shall provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases, where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to examination. All promotions shall be made from the 3 having the highest rating, and where there are less than 3 names on the promotional eligible register, as originally posted, or remaining thereon after appointments have been made therefrom, appointments to fill existing vacancies shall be made from those names or name remaining on the promotional register....

Tracking that provision, Board's Rules state (D. 12(M) ¶ 16):

> The Commission shall make promotions from the three persons having the highest rating.

Board's procedures to provide input for its decision comprised written evaluations, oral interviews[4] and departmental evaluations (for which the Chief apparently was responsible). As an added factor, Illinois law boosts the ranking of those applicants who have had military service (D. 12(M) ¶ 14; 65 ILCS 5/10–2.1–11).

To return to the particular facts of this case, initial results of the evaluations (posted on January 30, 1991) placed Sundstrom third on the list, behind Thomas Landmeier ("Landmeier") and Dennis Horcher ("Horcher") (P. 12(N) Supp. ¶ 3). Inclusion of military points advanced Sundstrom to first place on the list (*id.*).

During November and December 1991, after the examinations but before anyone was promoted to Captain, Sundstrom met with newspaper reporter Rebecca Carr ("Carr"). Sundstrom told Carr of his concerns about the Racecourse's fire safety and expressed concern that Fire Chief Rodewald had signed off on the Racecourse even though safety violations still existed (P. 12(N) Supp. ¶ 4).

Carr interviewed Rodewald on December 5, 1991 (Carr Dep. 29). Sundstrom claims, and Carr's deposition supports the claim, that Rodewald knew that Sundstrom had told Carr of what he considered irregularities in issuance of the Racecourse's certificate of occupancy. Specifically, she asked Rodewald (1) about discrepancies between his report and Sundstrom's and (2) why, contrary to standard practice, he had ordered Sundstrom to give him both copies of the fire inspection report rather than to mail one to the State Fire Marshal (*id.* 47, 100–01; P. 12(N) ¶ 5). Rodewald, while conceding that he was aware that Sundstrom had met with Carr, purports to deny "knowledge of specific statements by Sundstrom" (D.Mem. 4). But of course this Court cannot credit such a statement in a party's brief that does not identify any supporting evidence in the record.

On December 10, 1991, five days after Carr had interviewed Rodewald, the latter wrote a memorandum to the Village Manager recommending appointment of Landmeier to fill the captain vacancy (P. 12(N) Supp. ¶ 9). Sundstrom also asserts (*id.*) that Rodewald called Board member Howard Pollard ("Pollard") to suggest that Sundstrom not be appointed, at least in part because he had gained his ranking through military points rather than on merit.[5] On December 17,

---

4. Board members conducted the oral interviews, and they evaluated candidates for promotion based on nine factors, including experience and overall fitness (P. 12(N) Supp. ¶ 3).

5. Rodewald denies having made that call, but another Commissioner stated when deposed that Pollard had called him and told him of the phone call (Harwell Dep. 16–18; P. 12(N) Supp. ¶ 9). That statement is hearsay as to Rodewald and is hence inadmissible on the current Rule 56 motion, just as it would be at trial (Rule 56(e)). But even if it were considered, it would not really bear on the question whether Rodewald was fueled by a retaliatory motive based on Sundstrom's statements to Carr. Nothing suggests that the emphasis to be placed on particular factors entering into an applicant's score may not be considered in deciding which of the top three applicants to promote.

1991 Rodewald met with Board members Robert Schuldt ("Schuldt") and Pollard about the promotion, and Rodewald again recommended that Landmeier fill the vacancy. This time his stated reason for the recommendation was that Landmeier had 18 years on the force, including 8 years as an inspector (P. 12(N) Supp. ¶ 11). Rodewald did not refer to Sundstrom's statements to Carr (P. 12(N) Supp. ¶ 10).

Landmeier eventually received the promotion, and Sundstrom brought this Section 1983 against Village, Rodewald, Board and Board members Schuldt and Pollard. Federal jurisdiction derives from 28 U.S.C. §§ 1331 and 1343(a)(3).

### Procedural Due Process Violation?

For Fourteenth Amendment purposes as such, Sundstrom trains his sights on a claimed deprivation of his right to procedural due process, claiming that defendants denied him promotion without a proper hearing.[6] But that misses the point that the deprivation itself must implicate a property or liberty interest. Because Sundstrom fails on that score to begin with, this opinion need not reach the question whether Sundstrom received an adequate hearing.

*Board of Regents v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) explains that "the range of interests protected by procedural due process is not infinite" but extends only to the deprivation of liberty or property interests (*id.* at 569, 92

S.Ct. at 2704). Only the second of those categories is arguably at issue here.[7] And the absence of a property interest in the promotion dooms that aspect of Sundstrom's claim.[8]

■ Property interests derive not from the Constitution but from an independent source such as state law (*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). There need not be an express statutory provision evidencing the entitlement, for it may arise from a nonstatutory promise on the part of the State (see *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (a person's due process property interest in a benefit exists "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit"); *Shlay v. Montgomery,* 802 F.2d 918, 921 (7th Cir.1986)).[9] But Sundstrom must show that he had a "legitimate claim of entitlement" to the position and not just an "abstract need, desire or unilateral expectation" (*Munson v. Friske,* 754 F.2d 683, 692 (7th Cir.1985) (citations omitted). Without such a legitimate claim there is no real *interest* for plaintiff to invoke at a hearing (*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709)).

■ Each of *Perry* and *Hermes v. Hein,* 742 F.2d 350, 355 (7th Cir.1984) (the latter case dealing specifically with promotions) states that a property interest may derive from a de facto rule that gives rise to a mutually explicit understanding (see also

---

**6.** Sundstrom did meet with Board once for an interview. However, he argues that he should have been able to meet with it again after Rodewald had made his recommendation—that is, before Board reached a final decision. That contention is fabricated out of whole cloth—no authority cited by Sundstrom or known to the Court even hints at such a requirement in due process terms. It is worth noting (though of course it cannot control for constitutional purposes) that one of the limited statutory exceptions to the Illinois Open Meetings Act permits public bodies to hold executive sessions to consider information regarding their personnel decisions (5 ILCS 120/2(B)(1)), just as Board did here.

**7.** Sundstrom does not and could not claim a liberty interest in the promotion. *Paul v. Davis,* 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164, 47

L.Ed.2d 405 (1976) holds that loss of a job does not amount to a liberty deprivation so long as other employment opportunities have not been foreclosed. It follows a fortiori that there is no liberty interest in a promotion where there is no accompanying threat to the employee's existing position (to say nothing of the availability of other jobs)—see the extended discussion in *Bigby v. City of Chicago,* 766 F.2d 1053, 1057–60 (7th Cir.1985).

**8.** Case law in this are employs the terms "property interest" and "entitlement" interchangeably.

**9.** Of course the "mutually explicit understandings" must still "support 'a legitimate claim of entitlement'" under "an independent source such as state law." (*Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 224 n. 9, 106 S.Ct. 507, 513 n. 9, 88 L.Ed.2d 523 (1985)).

*Shlay,* 802 F.2d at 921).[10] Attempting to latch onto those decisions, Sundstrom claims that an unwritten but mutually recognized pact existed under which first-ranked individuals would receive promotions to Captain.

To support that contention Sundstrom points principally to (1) deposition testimony referring to Board's practice to promote in rank order, (2) defendants' inability to produce documentation to support their deposition testimony that some past promotions had been made other than to a first-ranked applicant and (3) Sundstrom's own testimony that Rodewald told him and a representative of a company that made firefighter uniforms that Sundstrom would receive the promotion. Defendants deny that Rodewald made those comments. But on defendants' Rule 56 motion, this Court must credit the pro-Sundstrom evidence (see n. 2).

Those things, however, do not salvage Sundstrom's claim. His potential for promotion "was created and defined by statutory terms" (*Roth,* 408 U.S. at 578, 92 S.Ct. at 2709) that do not of themselves confer on the first-ranked applicant any entitlement to the promotion. And Sundstrom's own testimony negates any "mutual understanding" that would create the equivalent of such an entitlement.

Illinois' statute specifically sets out the promotion procedure under which a choice is made from among the top three candidates. Illinois case law teaches that the statute "grants to a police or fire commission the discretion to promote any candidate from among the three highest candidates that appear on a certified promotion list" (*Brunke v. Board of Fire & Police Comm'rs,* 99 Ill. App.3d 25, 28, 54 Ill.Dec. 503, 506, 425 N.E.2d 15, 18 (1st Dist.1981), citing *McCoy v. Board of Fire & Police Comm'rs,* 79 Ill. App.3d 742, 35 Ill.Dec. 70, 398 N.E.2d 1020 (1st Dist.1979)). And *Bigby,* 766 F.2d at 1057 also points to *McCoy* in its succinct summary of Illinois law:

Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice. See Ill.Rev.Stat. 1981, ch. 24, ¶ 10–1–13; Chicago Municipal Code ¶ 25.1–5(5) (1977). Construing the counterpart provision in the statute governing the police forces of smaller municipalities, *McCoy v. Board of Fire & Police Comm'rs,* 79 Ill.App.3d 742, 744, 35 Ill.Dec. 70, 72, 398 N.E.2d 1020, 1022 (1979), holds that "the promotion of a patrolman to sergeant is one of discretion," so that the plaintiff "had no vested right to promotion." The same is true of promotion from sergeant to lieutenant. Indeed it is more strongly true, since discretionary factors loom larger as one moves up in a hierarchy. Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. "To have a property interest ... a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement* to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added). That is missing here.

Thus Sundstrom must somehow show that—or more accurately in the Rule 56 context, he must at least create a material factual dispute as to whether—he shared a mutual understanding with Board that the latter had abdicated its statutory discretion in favor of an invariable appointment of the number-one-ranked applicant. Put aside for a moment the question whether public officials might validly do that—whether what amounts to such an administrative amendment to a statute would not contravene public policy or would not be otherwise invalid under Illinois law (issues reserved in *Hermes,* 742 F.2d at 355). Quite apart from that, Sundstrom himself has really negated the existence of any mutual understanding to that effect—rather he was well aware "that

---

**10.** *Hermes* also dealt with a claim by the first-ranked of three top applicants, governed by the same Illinois statute, that he was entitled to promotion. However, the court declined to decide in that case whether "Illinois law would allow the defendants to adopt a policy of promoting only the highest ranked candidate because, even if it would, there is no evidence from which we can reasonably infer that this alleged policy was ever promulgated" (742 F.2d at 355).

the Fire & Police Commissioners have the option to pick one of the top three names on any list" (his Dep. 15–16). That dooms any claim by Sundstrom under the mutual-understanding approach.

In sum, the applicable Illinois statute confers "unfettered discretion" (*United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir.1989)) on Board to have chosen either Sundstrom or Landmeier (or for that matter Horcher). And there is *no* evidence that Board ever communicated to Sundstrom any surrender of that discretion, so as to create a "mutually explicit understanding" that he had an enforceable right to the promotion. Like the applicants in *Bigby* and *City of Chicago* and numerous other cases, Sundstrom therefore succumbs at the first step of the due process analysis—the need to show a property interest.

#### *First Amendment Violation?* [11]

■ As for Sundstrom's second ground for recovery, defendants' memoranda appear to argue (though they are not wholly clear on the subject) that no First Amendment claim exists absent a property interest. But that reflects a total misunderstanding of the conceptual basis of such a claim (see *McGill v. Board of Educ. of Pekin Elementary Sch. Dist. No. 108*, 602 F.2d 774, 780 (7th Cir. 1979) ("The question is not, as in a procedural due process case, whether plaintiff had a protected property interest in her position at any particular school"); see also *Altman*, 734 F.2d at 1243; *Berndt*, 781 F.Supp. at 557).[12] As *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977) (citation omitted) explains:

> [C]laims under the First and Fourteenth Amendments are not defeated by the fact that [plaintiff] did not have tenure. Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms.

So Sundstrom has at least a potential First Amendment claim despite his lack of legal entitlement to the promotion. But before the refinements of such a claim are explored, the very statement of the rule in *Mt. Healthy* dictates drastic surgery on the prospective targets of that potential claim.

■ Village itself does not belong in this case. Illinois law squarely vests the decisional process as to promotion in Board. And even if that statutory vesting could be viewed as some kind of delegation by Village (surely a bizarre reading of the statute), notions of respondeat superior play no role in Section 1983 jurisprudence (*Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)).

■ Board, Schuldt and Pollard are entitled to be exculpated as well, for there is not a whisper of evidence to connect them with the claimed retaliation by Rodewald. Carr's article had not been published when Schuldt and Pollard acted, and each of them has filed an uncontroverted affidavit that he had no knowledge of Sundstrom's meeting with Carr or of Sundstrom's speech. *Caldwell v. City of Elwood*, 959 F.2d 670, 672 (7th Cir.1992), quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir.1992), puts the matter simply:

> A civil rights complaint must outline a violation of the constitution or a federal statute "and connect the violation to the named defendants."

**11.** As alluded to in n. 1, Sundstrom's asserted First Amendment rights necessarily flow from the Fourteenth Amendment. While his claimed entitlement to a hearing has unsuccessfully sought to implicate the procedural component of the Due Process Clause, his First Amendment allegations involve the substantive component of that clause (see *Altman v. Hurst*, 734 F.2d 1240, 1243 (7th Cir.1984) (per curiam); *Berndt v. Jacobi*, 781 F.Supp. 553, 556 (N.D.Ill.1991), *aff'd by* *an unpublished order*, 978 F.2d 1261 (Table), 1992 WL 313118, 1992 U.S.App. LEXIS 28334 (7th Cir. Oct. 30)).

**12.** For a discussion of the types of constitutional claims available to a Section 1983 claimant under the Fourteenth Amendment, see *Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).

Because Sundstrom has plainly not made that connection, those defendants too are out of the case.

That leaves only Rodewald for consideration. And to evaluate Sundstrom's First Amendment claim against Rodewald—the claim that he poisoned the well of Board's decision to get back at Sundstrom for the latter's critical statements to reporter Carr—it is necessary to explore the refinements of the law applicable to such retaliatory conduct.

■ Public employees such as Sundstrom who claim to have been sanctioned on the basis of their speech face a multi-tiered legal burden. As a threshold matter the employee must show that his or her speech directly implicated a matter of public concern (*Connick v. Myers*, 461 U.S. 138, 143–49, 103 S.Ct. 1684, 1688–91, 75 L.Ed.2d 708 (1983)). *Marshall*, 984 F.2d at 795 has most recently elaborated on that concept, originally announced in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968):

> Opinions of this court subsequent to *Connick* have directed that, when determining whether speech touches upon a matter of public concern, we are not to examine solely the content of that speech. "[T]he *Connick* 'test requires us to look at the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?'"

And there is a further hurdle to overcome: "Even when speech concerns public issues, *Pickering* requires the court to strike a balance between the interests of the public employee in commenting on matters of public concern and that of the State, as an employer, in efficiently carrying out its public services" (*Biggs v. Village of Dupo*, 892 F.2d 1298, 1303 (7th Cir.1990)). But it must be remembered in administering the balancing test that "freedom of speech is not traded for an officer's badge" (*id.*).

Moreover, it is not enough for the employee to pass those two tests, the former dealing with content and the latter dealing with context (*id.* at 1301).[13] As the earlier quotation from *Mt. Healthy* states, the employee must also show causation. *O'Connor v. CTA*, 985 F.2d 1362, 1368 (7th Cir.1993) has characterized *Mt. Healthy* as having "placed the burden on the plaintiff alleging retaliation for the exercise of constitutionally protected rights to show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's action." Accord, *Rakovich v. Wade*, 850 F.2d 1180, 1189–90 (7th Cir.1988) (en banc).

■ So much, then, for the legal framework of Sundstrom's First Amendment claim against Rodewald. Application of that framework to the facts here (that is, to the assumed facts for purposes of Rodewald's summary judgment motion) poses little difficulty.

As for the *Connick* requirement that Sundstrom show that his speech dealt with a matter of public concern,[14] it is a fair inference from the evidence that Sundstrom's speech was not just the personal grievance of an employee whose sole concern was self-advancement. Nor were Sundstrom's statements to Carr "personal criticism of a coworker, *e.g.*, carping comments about personal characteristics or traits, that essentially are of private concern among the individuals involved" (*Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983 (en banc)). Instead it is reasonable to infer that Sundstrom sought "to bring to light actual or potential wrongdoing or breach of public trust on the part of" Rodewald (*Connick*, 461 U.S. at 148, 103 S.Ct. at 1690). Sundstrom spoke to Carr about a pattern of what he considered improperly motivated approvals (P. 12(N) ¶14)—breaches on the part of a public servant Sundstrom considered to have that endangered the public's safety.

---

13. Both the *Connick* and the *Pickering* issues are to be decided by the district judge in the first instance (*Connick*, 461 U.S. at 148 n. 7, 150 n. 10, 103 S.Ct. at 1690 n. 7, 1691 n. 10; *Biggs*, 892 F.2d at 1300 n. 1).

14. That issue was not raised by defendants until their reply brief, so that Sundstrom's counsel did not have occasion to address it.

As for the *Pickering* balancing test, Rodewald has really let that issue go by default at the summary judgment stage—by failing even to cite *Pickering*, let alone to explain how or why any institutional interests should outweigh Sundstrom's interest in commenting on matters of public concern. It is not this Court's role to do that job of lawyering for Rodewald.

Finally, as to causation, Sundstrom's Mem. 10 directs this Court to this set of assertedly material facts:

1. Fire Chief had never requested a non-rank order promotion and told plaintiff and another firefighter that he would be the next captain;

2. There are no fire department personnel records to show that anybody has been promoted out of rank order;

3. The custom and practice of the Board has been to promote on the basis of rank order and give the promotions to the person on the top of the list;

4. The Fire Chief made his recommendation five days after learning from the newspaper reporter the substance of what plaintiff told her;

5. The Fire Chief denied knowing what the newspaper reporter learned from the plaintiff;

6. Under the evaluation system used by the Board, plaintiff had already been given a higher experience rating than the person who was promoted, and the plaintiff had higher experience points than the Fire Chief, Deputy Chief and Captain Leligdon at the time of their promotions;

7. The Fire Chief assigned plaintiff as an inexperienced inspector to work on the race track but blocked his promotion to captain allegedly because of his inexperience;

8. Shortly after the Chief recommended plaintiff not be promoted, the Fire Chief allowed the promotion of a lieutenant to work in the Fire Prevention Bureau, even though the second ranking person on the lieutenant's list had previous fire inspection experience;

9. Military points to which plaintiff was entitled were used against him when the Fire Chief told the Board about the military points and Commissioner Pollard asked Commissioner Harwell if plaintiff could be bypassed because he had used military points. Board rules allowed plaintiff a right to use military point for his promotion.

With all reasonable pro-Sundstrom inferences, those pieces of evidence would indeed support a finding that Rodewald retaliated against Sundstrom because of his protected speech. Whether or not that is so, or whether or not—even assuming a retaliatory motive—Landmeier's greater experience would have led Rodewald to recommend him anyway, are matters to be decided at trial.

### Other Potential Defenses

Just as Samuel Johnson cynically remarked that "Patriotism is the last refuge of a scoundrel,"[15] so no Section 1983 lawsuit would be complete without defendants' advancement of a qualified immunity defense. This case is no exception, with defendants' memoranda asserting one such claimed defense that really fits that label but is plainly wrong on the law and another that is both mislabeled and equally without merit.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) teaches that under qualified immunity doctrine "public officials performing discretionary functions are protected against suits from damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) amplifies upon *Harlow* by stating:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

■ But *Pickering* has been the law for a quarter century.[16] And since its pronounce-

---

**15.** James Boswell, *Life of Dr. Johnson,* vol. I at 547 (Everyman ed.).

**16.** Indeed, the case is sufficiently ancient that this Court—then a private practitioner—was

**1152**

ment courts have consistently applied the First Amendment to protect employees from being retaliated against for exercising their right to free speech. Sundstrom's First Amendment claim breaks no new ground, so that Rodewald is not entitled to qualified immunity.

■ As for the wrongheaded "qualified immunity" argument, D. Mem. 13–14 cites *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) to urge that Sundstrom could at best show only minimal damages (and impliedly should therefore not be entitled to sue at all). But whether Sundstrom had a clearly established right (the true qualified immunity issue) is a wholly different question from the price that must be paid for violating that right. And even in the latter respect *Hessel v. O'Hearn,* 977 F.2d 299, 301 (7th Cir.1992) (citations omitted) confirms that any claimed lack of substantial actual damages in a substantive due process case does not bar a plaintiff from seeking damages, let alone from bringing suit:

> [T]here is no minimum amount of controversy in federal civil rights cases ... [A]lthough general or, as they are sometimes called, "presumed" damages—compensatory damages awarded without proof of injury—are not recoverable in a constitutional tort suit when the only infringement of constitutional rights is a denial of due process in the sense of a right to notice and a hearing, they may be recoverable when substantive constitutional rights, such as the right to freedom of speech, or the right to be free from unreasonable searches and seizures, are infringed.[17]

■ Defendants Mem. 12–13 has also urged that Sundstrom's failure to utilize an Illinois procedure to seek review of Board's decision serves as a bar to his claim. Even as to Board (and leaving aside the acknowledged split in Illinois case law as to the availability of such review of its promotion

decisions), that contention disregards the controlling decision in *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) that Section 1983 plaintiffs need not exhaust state judicial or administrative remedies before going to federal court. *Patsy* clearly applies in the First Amendment context (see, e.g., *Miller v. Town of Hull, Mass.,* 878 F.2d 523, 529–30 (1st Cir.1989)). And as to the sole remaining defendant, Rodewald, there is an added factor: Nothing suggests that any potential state administrative review of Board's action would afford any remedy against him individually to begin with.

### Conclusion

There is no genuine issue of material fact as to Sundstrom's attempted reliance on the Due Process Clause, and all defendants are entitled to a judgment as a matter of law on Count II. As for Sundstrom's invocation of the First Amendment, there are again no genuine issues of material fact as between Sundstrom on the one hand and Village, Board, Schuldt and Pollard on the other. Each of those defendants is entitled to a judgment as a matter of law on that issue as well. Because this action is therefore dismissed in its entirety as to all of those defendants, as permitted under Rule 54(b) this Court expressly determines that there is no just reason for delay and expressly directs the entry of final judgment in their favor (see *National Metalcrafters v. McNeil,* 784 F.2d 817, 821 (7th Cir.1986)).

But as to Sundstrom's claim of retaliatory conduct on Rodewald's part, material factual issues compel the denial of Rodewald's current Rule 56 motion. Both parties' counsel are ordered to appear at a next status hearing at 1:30 p.m. on June 28, 1993 to discuss arrangements for the trial of that claim.

counsel for the ACLU as amicus curiae, arguing in support of the First Amendment claim (391 U.S. at 564).

**17.** [Footnote by this Court] This Court of course recognizes the inherent problem of applying the notion of proximate cause—the relationship be-

tween the wrongful conduct and the ultimate harm—in a case such as this one, where the actual decisionmakers were free of any fault in the decision that *they* reached. That however remains to be sorted out in the future.