**FACER**

v.

**CITY OF TOLEDO**

Court of Common Pleas of Ohio,
Lucas County.

No. CI98–1528.

Decided June 4, 1998.

2

**4**

*Nathan & Roberts, R. Michael Frank* and *Paul Belazis,* for plaintiff.

*Robert Young,* Assistant Law Director, for defendant.

CHARLES J. DONEGHY, Judge.

Following an April 27, 1998 hearing on the plaintiff's motion for preliminary injunction, this declaratory judgment/permanent injunction case is now before the court for a judgment on the merits.[1] Upon review of the pleadings, evidence adduced and entered at the hearing, oral and written arguments of the parties, and applicable law, the court finds that the defendant is entitled to judgment as a matter of law.

## I.   FACTS

The plaintiff, Dennis Facer, is a captain in the city of Toledo's Fire Division ("the Fire Division"). This case arises from the failure on the part of the city of Toledo ("the city") to promote Captain Facer to the rank of Battalion Chief; that position is immediately above the rank of captain and is one of the highest ranks in the Fire Division. Openings for the Battalion Chief position fall under the aegis of the city's civil service commission ("the commission"). In the fall of 1996, Captain Facer scored second on a competitive examination run by the commission to fill then-expected openings in the rank of Battalion Chief. Based on that result, the commission ranked Captain Facer second of eight candidates on the 1996 eligibility list established by the commission for the future Battalion Chief openings. Under this "competitive" system, the commission was to certify the top three ranked candidates for any one opening, and the Chief was to select the candidate of his choice from among the three certified; the parties refer to this selection method as the "rule of three."[2] The city, through Fire Chief Michael Bell ("Chief Bell" or "the Chief"), filled the first open Battalion Chief position on

---

1.  The parties have stipulated that the court should consolidate the trial of the action on the merits with the hearing of the application for preliminary injunction.

2.  The competitive selection system and the "rule of three" were established in and given the force of law by the city charter and the commission's rules.

or about December 17, 1996 with the highest ranking candidate on the list.[3] Sometime before January 1, 1997, the city and the Battalion Chiefs' union[4] agreed that any Battalion Chief opening occurring after January 1, 1997, would be filled under a newly established noncompetitive selection system at the Chief's sole discretion.[5] He was to make his selection from the existing pool of candidates regardless of exam results or ranking. On or about March 7, 1997, March 21, 1997, and July 19, 1997, Chief Bell filled the next three openings with the seventh, fourth, and eighth candidates, respectively. Captain Facer expects that only one more Battalion Chief position will become available under the current eligibility list.[6] Captain Facer filed this action seeking a declaration that under the "rule of three," he is entitled to the one final opening and that a permanent injunction forcing the city to appoint him to that position should be granted.[7]

## II. APPLICABLE STANDARDS

### A. STANDARD FOR GRANTING AN INJUNCTION

In determining whether to grant injunctive relief, Ohio courts have applied the following factors:

"(1) the likelihood or probability of a plaintiff's success on the merits; (2) whether the issuance of the injunction will prevent irreparable harm to the plaintiff; (3) what injury to others will be caused by the granting of the injunction; and (4) whether the public interest will be served by the granting of

---

3. For all relevant promotions from 1986 through 1996, the chiefs did promote the highest ranking candidates for each position except for one promotion from each of the 1988 and 1990 eligibility lists.

4. Captain Facer was not and is not now a member of that union.

5. Under the new noncompetitive selection system, the Chief could promote anyone on the list of candidates certified by the commission; certified candidates would have to satisfy only time-in-grade requirements.

6. The parties agree that the current 1996 eligibility list expires in November or December 1998.

7. At various places in his briefs, Captain Facer alternatively contends that the candidates elevated in the second, third, and fourth promotions were not entitled to those promotions. However, the court finds that Captain Facer's entitlement to a promotion is an issue based solely on the discretion afforded the Fire Chief by the "rule of three" and, thus, is distinct and legally unrelated to the individuals actually selected. Thus, the court finds that the proper focus of Captain Facer's action is the one expressly addressed in his amended complaint, i.e., whether he is entitled to be appointed to the last Battalion Chief vacancy likely to arise under the 1996 eligibility list. (See Amended Complaint, Prayer for Relief.)

the injunction." *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 49, 619 N.E.2d 1145, 1148.

An injunction is an extraordinary equitable remedy employed by courts only when there is no adequate remedy at law. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498–499. Courts are to exercise great caution when determining whether to grant injunctive relief that would interfere with the executive branch of government. *Id.* A trial court's judgment regarding relief will not be disturbed in the absence of a clear abuse of discretion. *Corbett*, 86 Ohio App.3d at 49, 619 N.E.2d at 1148–1149.

## B. DECLARATORY JUDGMENT

Declaratory judgments are governed by R.C. Chapter 2721. R.C. 2721.03 provides as follows:

"Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise, may have determined any question of construction or validity arising under such instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

Thus, courts may declare the rights of parties that arise under a contract or law, and the status and legal relations of and between the parties. *Apseloff v. Brookside Golf & Country Club Co.* (Dec. 23, 1997), Franklin App. No. 97APE07–925, unreported, 1997 WL 798322. A request for a declaratory judgment is proper if (1) an action is within the scope of the Declaratory Judgment Act, (2) a justiciable controversy exists between adverse parties, and (3) speedy relief is necessary to preserve rights that may otherwise be impaired or lost. See *Freedom Rd. Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204, 685 N.E.2d 522, 524.

## III. DISCUSSION

In this case, Captain Facer alleges that the policy and custom of the Fire Division under the "rule of three" was for the Chief to promote captain candidates to open Battalion Chief positions in their order of ranking on the current eligibility list (Amended Complaint para. 4); the Chief deviated from this practice when he made the second, third, and fourth promotions off the 1996 eligibility list (*id.* at para. 5); Captain Facer was entitled to those promotions based both on his position on the eligibility list and the Fire Division's custom and practice (*id.* at

para. 6); because he was not promoted, Captain Facer was deprived of advanced pay, enjoyment, and career opportunities (*id.* at para. 7); and Captain Facer is entitled to the final expected promotion to be made from the current eligibility list because of his rank on the list (*id.* at para. 8). Captain Facer asserts the following legal claims: (1) due process violations under the United States and Ohio Constitutions arising from being deprived of a property interest with out due process of law; (2) breach of contract; (3) equitable relief based on the doctrines of equitable and promissory estoppel; (4) violation of the city charter and civil service rules; and (5) violation of the retroactive law provisions of the Ohio Constitution. In his briefs and at the hearing, Captain Facer argued that Chief Bell's deviation from the "rule of three" and the rank order promotions Captain Facer claims customarily accompanied that method deprive him of the promotion he claims is due him. He seeks a declaration that he has an absolute right to the expected final Battalion Chief position, and he seeks injunctive relief ordering Chief Bell and the city to appoint Captain Facer to that position.

The court will first address Captain Facer's claims for breach of contract and estoppel.

## A. BREACH OF CONTRACT AND ESTOPPEL CLAIMS

■■■■ Citing the case of *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, and its progeny, Captain Facer contends that the alleged custom and practice of the Chief promoting Battalion Chief candidates in their rank order constituted an implied contract to promote the candidates in that order.[8] In *Mers,* the court stated that "the facts and circumstances surrounding the employment relationship must be examined, including the character of the employment, custom, the course of dealing between the parties, company policy, or any fact which may illuminate the question." *Id.* at 104, 19 OBR at 264, 483 N.E.2d at 154. See, also, *Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 139, 545 N.E.2d 1244, 1249 ("the history of relations between an employer and employee may give rise to contractual or quasi-contractual obligations"). Generally, however, the proponent of an implied contract must establish each element necessary to the formation of a contract.[9] *Penwell v. Amherst Hosp.* (1992), 84 Ohio App.3d 16, 21, 616 N.E.2d 254, 257–258.

---

8. Preliminary, the court notes that the parties agree that no one expressly promised or offered Captain Facer a particular Battalion Chief opening and no one expressly promised him that the Chief would follow the claimed custom and practice of promoting strictly based on a candidate's ranking on the eligibility list.

9. It is well established that "[a] contract exists if there are *definite and certain terms, mutual assent to the terms, and a meeting of the minds of the parties.*" (Emphasis added.) *Kolleda v. Gawronski* (July 17, 1992), Erie App. No. E–91–67, unreported, 1992 WL 163949, citing

The court finds that the evidence unequivocally indicates that Chief Bell (and his predecessors) had discretion under the "rule of three" to make appointments to Battalion Chief vacancies. Captain Facer observes that Chief Bell and his predecessors generally exercised this discretion by promoting in rank order. However, Captain Facer acknowledges that in the nineteen Battalion Chief promotions from 1986 through 1996, the chiefs deviated from the general pattern of selecting by rank order on two occasions.[10]

Chief Bell's predecessor made the first deviation from the rank order pattern in 1988. In the second promotion off the 1988 list, the chief passed over the highest ranking individual certified by the commission, Gary Johnson. The city apparently began an investigation looking into whether Captain Johnson had falsified firefighter candidate records. The union representing the firefighters, lieutenants, and captains vigorously asserted that he had done no wrong. The city ultimately dropped its investigation against Captain Johnson. While the record fails to clearly indicate that Captain Johnson engaged in malfeasance and the record fails to fully reflect the nature of the then chief's reasons for passing over Captain Johnson, the record clearly indicates that the chief lost faith in the ability of Captain Johnson to work harmoniously as an upper echelon member of the Fire Division. The record is also replete with testimony emphasizing the vital importance of a Battalion Chief's ability to work harmoniously and closely with the chief because of the former's elevated position within the division hierarchy. A Battalion Chief's loyalty and ability to work closely with the chief to further the latter's vision and direction are vitally important.

The second deviation occurred in 1990. Chief Bell passed over the then highest ranking individual, Michael Hertzfeld, in favor of the next person on the eligibility list. Chief Bell bypassed Captain Hertzfeld based on the Chief's perception that Captain Hertzfeld was weak in administrative background and was not "being a team player." Apparently, Chief Bell bypassed Captain Hertzfeld based on a misunderstanding. During a final oral interview period, Chief Bell believed he heard Captain Hertzfeld indicate that the captain would refuse to take a staff/administrative appointment (as opposed to a line/station house appointment) if the Chief promoted Captain Hertzfeld to Battalion Chief. After being passed over, Captain Hertzfeld clarified with Chief Bell that the captain would take any Battalion Chief assignment that the Chief made but that,

---

*Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137. Along with a meeting of the minds on the relevant and definite terms, there also must be an *offer* on one side and an *acceptance* on the other. *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 79, 2 OBR 632, 633–634, 442 N.E.2d 1302, 1304,

**10.** Indicating that, under the "rule of three," the chief is not compelled to take the highest person on the eligibility list.

during the oral interview, Captain Hertzfeld had only expressed his preference for a station house assignment, not his unwillingness or inability to take an administrative position. Captain Hertzfeld received the next appointment. (*Id.*) The court finds that the record plainly reflects the importance of a Battalion Chief's ability to work competently in both line/station house and staff/administrative roles; Battalion Chiefs must have multidimensional abilities.

Thus, the court finds that the general discretion that the Fire Chief usually exercised when appointing Battalion Chiefs under the "rule of three" (by promoting in order of rank) had two established exceptions. Those were (1) a candidate's lack of loyalty to the Chief or inability to *work harmoniously* with the Chief, and (2) a candidate's lack of *administrative competence* and/or experience or refusal to work in an administrative position. The court finds that the record plainly contains evidence upon which Chief Bell reasonably could have concluded both that Captain Facer would not work harmoniously with the Chief and that Captain Facer had insufficient administrative experience. As to the "harmony" issue, the record indicates that on one occasion Captain Facer objected to his proposed appointment to an administrative captain position; he told Chief Bell that he did not desire the assignment even though the Chief had told Captain Facer that the Chief believed that the proposed assignment was a compliment to Captain Facer. On another occasion, after he had been bypassed for Battalion Chief promotion, Captain Facer refused to shake Chief Bell's hand in a public setting when the Chief offered his hand.

As to the "administrative" issue, Captain Facer's declination of the administrative position that Chief Bell viewed as a "compliment" is one situation in which Captain Facer did not pursue a specific administrative experience that Chief Bell viewed as a favorable one for Captain Facer. And, on another occasion after Captain Facer had been passed over, Chief Bell told Captain Facer that he wanted to promote "well-rounded officers" and, to that end, administrative captain positions were then currently available to Captain Facer. Captain Facer did accept one of those positions and remains in a line/station house position.

Based on the foregoing, the court finds that under the "rule of three" Chief Bell had discretion to deviate from the general practice of promoting captains to the Battalion Chief position in order of rank on the applicable eligibility list when the Chief reasonably believed that the captain either would be unable to work harmoniously with the Chief or had insufficient administrative experience to be a well-rounded Battalion Chief. The court also finds that the Chief reasonably could conclude (and could have concluded) that Captain Facer is (and was) deficient in these two areas. Accordingly, the court finds that the general custom and practice of promotion by order of rank, arising under "rule of three," does

not provide Captain Facer with an implied contractual entitlement to a promotion to the expected Battalion Chief opening.

■ Similarly, the court finds that Captain Facer's claim based on the doctrines of promissory and/or equitable does not entitle Captain Facer to the next open Battalion Chief position.

■ The elements of promissory estoppel are:

"(1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) such reliance must be reasonable and foreseeable; and (4) the party relying on the promise must have been injured by such reliance." *Stahl v. Brush–Wellman, Inc.* (Oct. 13, 1995), Ottawa App. No. OT–95–01, unreported, 1995 WL 604612.

As discussed above, the record indicates that no one made a clear and unambiguous promise to Captain Facer that he would be appointed to a Battalion Chief position or made a promise that Chief Bell would strictly adhere to a general rule of appointment based on rank order. Thus, the doctrine of promissory is inapplicable here.

■ Equitable estoppel applies to parties and privies to a transaction. The elements are:

"(1) representation by the party to be estopped; (2) which representation 'communicate[s] some fact or state of affairs in a misleading way'; (3) and which induces reasonable, actual reliance by the second party; (4) who would 'suffer prejudice or pecuniary disadvantage' unless the first party is estopped 'from asserting an otherwise valid right in contradiction to his earlier representation.' " *Johnson v. Franklin* (1989), 64 Ohio App.3d 205, 210, 580 N.E.2d 1142, 1145, motion overruled (1989), 47 Ohio St.3d 716, 549 N.E.2d 172, quoting *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648.

■ Thus, the doctrine generally requires an express representation. *Id.* The record is devoid of any evidence that the city made such a representation to Captain Facer. Captain Facer asserts that Chief Bell told James Dugan, a fire captain who was the firefighters/lieutenants/captains union representative, that the Chief would adhere to the practice of promoting in rank order when filling vacancies in the Fire Division. However, the court notes that Captain Dugan acknowledged that the chiefs had deviated from that practice in 1988 and 1990. Additionally, Captain Dugan reported that Chief Bell told him that the Chief "intended to follow, *as strictly as possible,* the seniority [and ranking] lists as they came across from [the commission's] office." (Emphasis added.) Even assuming that Captain Dugan reported this statement to Captain Facer, the

statement is far from an unequivocal representation that the Chief would strictly follow rank order.

At least one court has labeled as "promissory or equitable estoppel" a party's failure to speak in order to dispel a reasonable notion entertained by a party to whom the former owed a duty to speak. See *Hedrick v. Ctr. for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App.3d 211, 214, 7 OBR 272, 274–276, 454 N.E.2d 1343, 1346–1347. However, the plaintiff's claim in that wrongful-discharge/employment-at-will case was based on the employer's use of documents outlining a progressive discipline policy. *Id.* at 212–213, 7 OBR at 272–274, 454 N.E.2d at 1344–1346. As outlined above, Captain Facer's claim is based on an unwritten practice that promotions would be made according to rank order. And the unwritten practice did have established exceptions into which Captain Facer falls.

Accordingly, the doctrines of promissory and equitable estoppel do not operate to require the city to appoint Captain Facer to the expected Battalion Chief vacancy.

## B. REMAINING CLAIMS

Captain Facer asserts three remaining claims: (1) violation of the city charter and the commission's rules, (2) deprivation of a property interest, and (3) violation of the retroactive-law provisions of Section 28, Article II, Ohio Constitution.

First, Captain Facer asserts that the city violated and continues to violate the city charter and the commission's rules by adopting a "noncompetitive" system for the remainder of the 1996 eligibility list and thereby deviating from the "rule of three" and the implicit practice of appointing by rank order. Under the new "noncompetitive" system, the Chief has expressly unlimited discretion to appoint anyone on the list of certified candidates submitted by the commission. For purposes of this case, the court will assume that the former "competitive" method remains applicable to Captain Facer. Under that system, as described above, the court finds that the city is not required to appoint Captain Facer to the last expected opening for Battalion Chief.[11]

As to the property interest claim, it is well established that:

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or

---

**11.** The court reaches this result without deciding whether the city may appoint individuals already on the "competitive" 1996 eligibility list to Battalion Chief vacancies under the revised "noncompetitive" procedure adopted by the Chief or, instead, must adhere to the preexisting "rule of three."

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561.

Civil service employees do have a property interest in their continued employment that may not be terminated without due process of law. See *Seltzer v. Cuyahoga Cty.* (1987), 38 Ohio App.3d 121, 122, 528 N.E.2d 573, 575–576. However, this case involves the right to a promotion not a deprivation of continued employment. Generally, no property interest exists in a procedure itself. *United of Omaha Life Ins. Co. v. Solomon* (C.A.6, 1992), 960 F.2d 31, 34. A person may establish a legitimate claim of entitlement protected by due process by showing either that he was actually awarded the position at any procedural stage or that local rules limited the discretion of state officials as to whom an appointment should be made. See *id.* (addressing federal contracts). The court has already determined that Captain Facer is not legally entitled to a promotion based on an implied contract, promissory or equitable estoppel, or the "rule of three." In *Sundstrom v. Arlington Hts.* (N.D.Ill.1993), 826 F.Supp. 1143, the court addressed a firefighter's claim that he had a property interest in a promotion by operation of the "rule of three." In that case, the court concluded that, absent a "mutually explicit understanding" between the firefighter and the appointing authority that promotions would be made in rank order, the firefighter had no property interest in the promotion. *Id.* at 1147–1148. This court finds the result reached in *Sundstrom* and the reasoning supporting it to be persuasive. For the reasons outlined above, the court finds that Captain Facer has no, and had no, property interest in a promotion to Battalion Chief because the parties had no mutually explicit understanding that candidates would be promoted in rank order.

Third, as to the claim based on the retroactive-law provisions of Section 28, Article II, Ohio Constitution, the court finds that this section, similarly, does not afford Captain Facer with the relief that he seeks in this case. In relevant part, the constitutional provision at issue provides as follows:

"The general assembly shall have no power to pass retroactive laws, of laws impairing the obligation of contracts * * *."

In *Fraternal Order of Police v. Hunter* (1975), 49 Ohio App.2d 185, 3 O.O.3d 252, 360 N.E.2d 708, the court reviewed the propriety of a changed civil service residency rule. The rule required that all certified employees live within the jurisdiction; the claimant was subject to dismissal for living outside the jurisdiction which was proper under the former rule. The *Hunter* court concluded that the Ohio Constitution's retroactive-law provisions prohibited the deprivation of the claimant's "vested rights" in his civil service employment without a compel-

ling state interest. *Id.* at 192, 198, 3 O.O.3d at 255–256, 259, 360 N.E.2d at 713, 716–717. This court notes that *Hunter* is properly distinguishable. Captain Facer has no, and had no, vested property right in a promotion to Battalion Chief.

## IV. CONCLUSION

Based on the foregoing discussion, the court finds that Captain Facer is not entitled to a declaration that he must be promoted to the next expected Battalion Chief position. Additionally, the court finds that he is similarly not entitled to the injunctive relief he seeks to execute his claimed entitlement. Accordingly, the court shall enter judgment in favor of the city and against Captain Facer, and the court shall order Captain Facer's claims against the city to be dismissed.

## JUDGMENT ENTRY

It is ORDERED that the defendant is entitled to judgment on the plaintiff's claims against it. It is further ORDERED that the plaintiff's claims for declaratory and injunctive relief are denied. It is further ORDERED that this case is dismissed with prejudice. The court finds that there is no just reason for delay.

*Judgment accordingly.*