136

WILLIAMS, DIR. OF ENVIRONMENTAL PROTECTION, APPELLANT AND CROSS-APPELLEE, *v.* CITY OF AKRON, APPELLEE; UNITED STATES STEEL CORP., APPELLEE AND CROSS-APPELLANT. UNITED STATES STEEL CORP., APPELLANT, *v.* WILLIAMS, DIR. OF ENVIRONMENTAL PROTECTION, APPELLEE.

(Nos. 77-104 and 77-238—Decided April 26, 1978.)

138

*Mr. William J. Brown,* attorney general, and *Mr. Stephen P. Samuels,* for Williams, Director.

*Mr. John Holcomb,* law director, *Mr. James R. Graves* and *Mr. Forrest W. Woodall,* for city of Akron.

*Messrs. Squire, Sanders & Dempsey, Mr. Van Carson* and *Mr. Thomas A. Hanson,* for United States Steel Corporation.

LOCHER, J. The sole issue presented for our consideration is whether the Court of Appeals has the jurisdiction to review the final orders of the Environmental Board of Review entered on appeals of an action of the Director of the Environmental Protection Agency amending certain water quality standards. The intent of the General Assembly to provide for a review in the Court of Appeals for Franklin County of the final orders of the board issued upon appeals of rule-making actions of the director is conclusively manifested in R. C. Chapter 3745. R. C. 3745.04 provides for an appeal to the board "for an order vacating or modifying the action" of the director. "Action" is defined within this section as including "the adoption, modification, or repeal of a regulation or standard." The board is required under the strictures of R. C. 3745.05 to enter "a written order affirming the action * * * [or] vacating or modifying the action appealed from." The order is "final unless vacated or modified upon judicial review." The jurisdiction of the Court of Appeals for Franklin County over appeals from the final orders of the board entered upon appeals is stipulated in R. C. 3745.06, which, in pertinent part, provides:

"Any party adversely affected by an order of the Environmental Board of Review may appeal to the court of appeals of Franklin County, or, if the appeal arises from an alleged violation of a law, or regulation, to the court of appeals of the district in which the violation was alleged to have occurred. * * *"

The legislative intention to confer jurisdiction on the Court of Appeals over rule-making appeals is conclusively manifested in the following portion of R. C. 3745.06:

"* * * When the court finds an ambient air quality

standard, an emission standard, or a water quality or discharge standard to be deficient, it shall order the director of environmental protection to modify the standard to comply with the laws governing air or water pollution. The court shall retain jurisdiction until it approves the modified standard. * * *"

Notwithstanding this explicit statutory endowment of jurisdiction, the Court of Appeals held that Section 3(B)(2), Article IV of the Ohio Constitution, precluded the court from reviewing orders of the board involving quasi-legislative or rule-making proceedings. This finding relied upon the Court of Appeals' prior decision in *Union Camp Corp.* v. *Whitman, supra* (unreported), upon remand by this court in *Union Camp Corp.* v. *Whitman* (1975), 42 Ohio St. 2d 441. The Court of Appeals' decision in that earlier case interpreted the wording of Section 3(B)(2) of Article IV of the Ohio Constitution to limit its jurisdiction to quasi-judicial administrative orders. This extension of the quasi-judicial, quasi-legislative dichotomy, previously applicable only to the jurisdictions of this court and the Court of Common Pleas because of the technical meaning of the word "proceedings" found in Sections 2(B)(2)(c) and 4(B), Article IV of the Ohio Constitution, occurred even though the Court of Appeals was cognizant of the absence of the word "proceedings" from Section 3(B)(2), Article IV, and hence the inapplicability of the *Zangerle* v. *Evatt* (1942), 139 Ohio St. 563, line of cases.

We can find no justification for the Court of Appeals' extension, for its jurisdictional purposes, of the dichotomy between quasi-judicial and quasi-legislative administrative orders. Section 3(B)(2), Article IV, as amended in 1968, provides, in pertinent part:

"Courts of appeals shall have * * * such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies."

In considering the difference in the wording of this section, Justice Herbert, in *Union Camp Corp.* v. *Whitman, supra* (42 Ohio St. 2d 441), at page 444, commented:

"Upon comparison of the above section [Section 3(B) (2)] with Section 4(B) of Article IV, construed in *Fortner*, and Section 2 of Article IV, interpreted in *Zangerle*, it is evident that the language in Section 3(B)(2) * * * reads far differently in relation to * * * review of administrative matters. Thus, the first paragraphs of the syllabi in *Fortner* and *Zangerle* have no application to the instant case. * * *"

This difference in wording is further accentuated when the historical development of the jurisdiction of the Courts of Appeals is reviewed. Section 6 of Article IV of the Ohio Constitution, as amended in 1912, provides:

"* * * The courts of appeals shall have * * * appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law * * *."

The November 1944 amendment to this section permitted the General Assembly, for the first time, to confer upon the Courts of Appeals appellate jurisdiction from administrative agencies. The precise wording of the 1944 amended version of Section 6 of Article IV, as relevant herein, is as follows:

"The courts of appeals shall have * * * such jurisdiction as may be provided by law to review, affirm, modify, set aside, or reverse judgments or final orders of boards, commissions, officers, or tribunals, and of courts of record inferior to the court of appeals * * *."

The 1959 amendment to Section 6, Article IV, did not change the preceding language.

Section 3(B)(2), Article IV, now under scrutiny was the product of the 1968 Modern Courts Amendment to the Ohio Constitution. Although renumbering and substantially rewriting this provision, the amendment was intended only to clarify and provided no substantive changes.[2]

---

[2] The Ohio Legislative Service Commission Staff Research Report No. 75, Problems of Judicial Administration (1965), states, at page 76,

142

Thus, there have been no substantive changes in the appellate jurisdiction, which the General Assembly may confer on the Courts of Appeals from administrative agencies or officers, since the 1944 amendment to Section 6, Article IV, established that the General Assembly may provide for such jurisdiction. This amendment occurred two years after the holding in *Zangerle, supra* (139 Ohio St. 563), that the revisory jurisdiction of proceedings of administrative officers authorized by Section 2, Article IV, contemplates only quasi-judicial proceedings, and Judge Turner's emphasis within that decision upon a specific word in Section 2, Article IV, is demonstrated by his statement, on page 566:

"It will be noted that the word 'proceedings' is used and not 'acts,' 'duties' or 'steps taken.'"

Since *Zangerle, supra,* preceded the amendment by two years, the drafters of this amendment were informed under the rationale of *Zangerle, supra,* that utilization of the word "proceedings" would clearly limit the Courts of Appeals' jurisdiction to final orders of boards, commissions, officers or tribunals that were quasi-judicial in nature. The absence of the word "proceedings" from the amendment thus infers the intent to permit the General Assembly to bestow upon the Courts of Appeals jurisdiction over all final orders of boards, commissions, officers or tribunals, whether quasi-judicial or quasi-legislative. There having been no substantive change in the judisdictional clause since the 1944 amendment, we are constrained to find that Section 3(B)(2) of Article IV of the Ohio Constitution does not support the Court of Appeals in the limiting of its jurisdiction to quasi-judicial administrative orders.

A careful examination of *Zangerle, supra,* discloses a second rationale—the lack of a justiciable case or controversy—for refusing to review the rule-making of the

as to the changes in Section 6, Article IV, the following:
"This section is substantially rewritten to clarify its provisions; there are no major substantive changes."

administrative agency. This second rationale reappeared and was affirmed in *Fortner* v. *Thomas* (1970), 22 Ohio. St. 2d 13, wherein the court set forth, in the second paragraph of the syllabus, the following:

"Courts will not aid in making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case. (*Zangerle* v. *Evatt*, 139 Ohio St. 563, approved and followed.)"

Thus, *Fortner, supra*, could be viewed as stating that all rule-making appeals fail to present justiciable questions. If so, despite the unequivocable conferment of jurisdiction by R. C. 3745.06 upon the Court of Appeals for Franklin County over appeals from the board's final orders upon the rule-making actions of the director and the absence of any prohibition in Section 3(B)(2), Article IV, precluding the Court of Appeals from taking jurisdiction below, no review of the instant cause would be possible for the lack of a justiciable case or controversy. However, in *Union Camp Corp.* v. *Whitman, supra* (42 Ohio St. 2d 441), Justice Herbert, in addressing the second paragraph of the syllabus in *Fortner, supra,* dispelled this inference of *per se* nonjusticiability of appeal from a rule-making order, stating, at page 445:

"The second paragraph of the *Fortner* syllabus sets forth a general statement of familiar judicial doctrine. It should not be taken as a sweeping eradication of the protection against significant bureaucratic abuse which is derived from judicial scrutiny of the activities of regulatory agencies. For example, see the syllabus in *Burger Brewing Co.* v. *Liquor Control Comm., supra* [34 Ohio St. 2d 93]."

In *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93, while finding that *Fortner, supra,* was dispositive on the issue of an appeal under R. C. 119.-11, the court held that declaratory relief was available and that a justiciable question was presented by the rule-

making action of the Liquor Control Commission. Interestingly, the three prerequisite elements to obtaining a declaratory judgment, *i. e.*, (1) a real controversy between parties, (2) a controversy which is justiciable in character, and (3) a situation where speedy relief is necessary to preserve the rights of the parties, found to exist in *Burger Brewing Co., supra*, are the elements of justiciability found lacking in *Zangerle, supra,* and *Fortner, supra.*[3] For a real controversy to exist, Justice William Brown, in *Burger Brewing Co.*, at page 97, explained that a violation of the regulation was not necessary as long as there was a controversy between parties having adverse legal interests, of sufficient immediacy or reality. To determine whether the controversy was of a justiciable character or ripe, the court adopted the following two-fold test enunciated by Justice Harlan in *Toilet Goods Assn.* v. *Gardner* (1967), 387 U. S. 158, 162:

"* * * first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied * * *."

Thus, in *Burger Brewing Co., supra*, this court found that justiciable issues were presented on the face of the regulation, where the party had standing and was in danger of suffering irreparable harm because the regulation was self-executing, thereby necessitating speedy relief. The decision, in *Burger Brewing Co., supra,* as implied by Justice Herbert's statement in *Union Camp Corp., supra,* previously mentioned herein, signifies a determination by this court that justiciability is to be determined upon the facts of the case, rather than denied on the basis that all review of rule-making actions are *ipso facto* nonjusticiable.

The instant causes present a situation clearly analo-

---

[3]A discussion and analysis of this court's decisions in the *Zangerle, supra,* and *Fortner, supra,* line of cases is found in Note, Judicial Review of Administrative Decisions in Ohio, 34 Ohio St. L. J. 853 (1973); and Rutledge, Administrative Review and the Ohio Modern Courts Amendment, 35 Ohio St. L. J. 41 (1974)

gous to the facts of *Burger Brewing Co., supra.* While there has been no allegation of a violation of the regulations, there exists a controversy between parties having adverse legal interests. The parties before the board advance conflicting positions on the propriety of the procedures followed by the director in adopting his amended regulation and on the substantive content of the regulations. Furthermore, the court's concern in *Zangerle, supra,* that any review of the challenged tax rule in the absence of the oil companies, whose land had been reclassified, would result in an advisory opinion, is absent. As in *Burger Brewing,* the instant causes contain both sides of the controversy, *i. e.,* the regulator, the director and those regulated against, U. S. Steel and the city of Akron.

From the board's final orders, the director and U. S. Steel appealed to the Court of Appeals, pursuant to the R. C. 3745.06 grant of standing to any party adversely affected by a final order of the board. Both parties claimed to have been adversely affected by the order and, in general, that the board failed to conduct a proper, adjudicatory *de novo* hearing. The director further sought the ultimate affirmance of his revised phenols standard, which U. S. Steel opposed on the basis of numerous, alleged, substantive and procedural errors. Absent a determination of the validity of the board's final orders, the regulations, as were those in *Burger Brewing, supra,* are self-executing. Thus, U. S. Steel will be subject to immediate compliance, and the director will be required to enforce this standard.

Certainly, the instant causes presented to the Court of Appeals for its review are justiciable controversies. The court was not asked to determine rights in a "vacuum," but had sufficient information contained in the record upon which to base its decisions.[4] Cf. *Fortner* v. *Thomas, supra.*

---

[4] A hearing was held by the board, briefs were submitted to the board and the Court of Appeals, and a record of the relevant proceedings before the director was first certified to the board and thereafter to the Court of Appeals.

As to the hardship upon the parties if judicial relief is denied, the self-executing nature of the regulations has a "present and direct effect" on the rights of the parties. *Burger Brewing Co., supra*, at page 98. The board's orders promulgated in the alleged aberrant version of an R. C. 3745.06 *de novo* hearing will impose extensive administrative and economic consequences upon the director in his effort to enforce them and impose upon U. S. Steel a phenols standard which is allegedly ten times more stringent than the former standards.

The parties are convinced that the board's orders were improper. A denial of judicial review from the board's orders leaves only the alternative of disobedience to test their validity, and associated therewith is the possibility of sanction if the challenge is unsuccessful. This situation was found in *Burger Brewing Co., supra*, at page 99, to constitute a " 'threat of irreparable injury' " necessitating speedy relief to preserve the rights of the parties. This relief has been provided for by the General Assembly in an appeal to the Court of Appeals for Franklin County.

The Court of Appeals, having been presented by each appeal with a justiciable case and controversy for its review of the rule-making action of the board, was thus without a basis for its dismissal of the appeals. Accordingly, we hold that the Court of Appeals erred in holding that it lacked subject-matter jurisdiction over the appeals and in dismissing the appeals.

Therefore, the judgments of the Court of Appeals are reversed, and the causes are remanded to that court for further proceedings in accordance with this opinion.

*Judgments reversed and causes remanded.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.