OPINION
Defendant-appellant, Betty D. Montgomery, Attorney General of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, Town Centers Limited Partnership, on its complaint for declaratory relief.
Plaintiff owns the Eastown Shopping Center in Dayton, Ohio. The shopping center includes one building that plaintiff has subdivided into three units. The city of Dayton's Division of Building Inspection has issued three separate certificates of occupancy to each of the three addresses ascribed to the units: 3864 Linden Road, 3866 Linden Road, and 3872 Linden Road. The Multicultural Supporters, Inc., a tax-exempt entity, leased 3872 Linden Road, and at all times pertinent was operating a charitable bingo game in the unit.
Pursuant to R.C. 2915.08, defendant regulates charitable bingo games and grants licenses to charities to operate such games. Defendant, Beth Jacob Synagogue ("Beth Jacob") is a charitable organization that has been running a licensed charitable bingo game for the past ten years. In December 1997, Beth Jacob entered into a lease with plaintiff to rent 3866 Linden Road for charitable bingo games, but the lease was contingent on Beth Jacob obtaining a license from defendant to operate a charitable bingo game at that address. In the same month, Beth Jacob filed an application not only to renew its charitable bingo license for 1998, but also to amend the license to change the location of the bingo game to 3866 Linden Road.
Defendant refused to act on Beth Jacob's application, admittedly based on its definition of "premises" as used in R.C.2915.09(A)(3), which provides that a non-charitable organization "shall not lease premises that it owns, leases, or otherwise is empowered to lease to more than one charitable organization per calendar week for conducting bingo games on the premises." In short, defendant determined that 3866 Linden Road was not a separate "premises" from 3872 Linden Road, where a charitable organization already was operating a licensed bingo game. After defendant notified Beth Jacob of its intent to refuse Beth Jacob's application, Beth Jacob applied for and was granted a license to operate a charitable bingo game at another location.
On October 1, 1998, plaintiff filed a complaint against defendant and Beth Jacob seeking a declaration that "premises" as used in R.C. 2915.09(A)(3) permits defendant to operate a licensed charitable bingo game at 3866 Linden Road. Plaintiff ultimately filed a motion for summary judgment. While the trial court found that plaintiff lacked standing to the extent it also sought an order requiring defendant to amend Beth Jacob's license to permit bingo games at 3866 Linden Road, it concluded plaintiff had standing regarding the meaning of "premises" in R.C.2915.09(A)(3). In addressing the merits of that contention, the trial court determined that "premises" is not limited to a building or structure, but could include separate divisions of a building which have been assigned their own addresses and certificates of occupancy. Accordingly, the trial court held that plaintiff was not precluded from leasing 3866 Linden Road to another charity for the purpose of running a charitable bingo game, despite 3872 Linden Road being leased for the same purpose.
Defendant appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PLAINTIFF-APPELLEE, FINDING THAT IT HAD STANDING TO FILE A DECLARATORY JUDGMENT ACTION AGAINST THE OHIO ATTORNEY GENERAL, ALTHOUGH IT NEVER APPLIED FOR A BINGO LICENSE AND ONLY HAD A CONDITION PRECEDENT LEASE WITH THE BINGO LICENSE APPLICANT, BETH JACOB CONGREGATION.
 II. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE PLAINTIFF-APPELLEE, FINDING THAT IT HAD STANDING TO FILE A DECLARATORY JUDGMENT ACTION AGAINST THE ATTORNEY GENERAL, EVEN THOUGH THERE IS AN ESTABLISHED ADMINISTRATIVE HEARING PROCESS TO CHALLENGE BINGO LICENSE DETERMINATIONS OF THE ATTORNEY GENERAL.
 III. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO PLAINTIFF-APPELLEE AND DECLARED THAT SEPARATE "PREMISES," AS THAT TERM IS USED IN 2915.09(A)(3) OF THE REVISED CODE, INCLUDES INTERNAL ROOMS WITH DIFFERENT ADDRESSES LOCATED WITHIN A SINGLE BUILDING, AS SUCH DECLARATION IS CONTRARY TO THE COMMON USAGE OF THE TERM PREMISES AND LEGISLATIVE INTENT TO CAREFULLY REGULATE AND RESTRICT BINGO IN THE STATE OF OHIO.
 IV. THE TRIAL COURT ERRED WHEN IT GRANTED THE PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER ON JANUARY 28, 1999, SINCE IT PREVENTED DISCOVERY RELATED TO THE ATTORNEY GENERAL'S AFFIRMATIVE DEFENSES AND EVIDENCE REGARDING THE ACTUAL PREMISES WHICH WERE THE SUBJECT OF THE DECLARATORY JUDGMENT ACTION.
Defendant's first and second assignments of error contend the trial court erred in concluding plaintiff had standing to file its declaratory judgment action. Defendant contends plaintiff lacked standing because (1) it was not the license applicant, and (2) it failed to exhaust the administrative remedies available to challenge the license determination. Defendant also asserts plaintiff failed to prove the elements necessary for declaratory relief. Because both assignments of error relate to plaintiff's standing to file the present suit, they will be addressed jointly.
An individual plaintiff has standing to sue only if he or she has a sufficient stake in the outcome of a justiciable controversy. Eng. Technicians Assn., Inc. v. Ohio Dept. ofTransp. (1991), 72 Ohio App.3d 106, 110. To meet that test, a plaintiff must show that he or she has suffered or will suffer a specific injury as a result of the challenged action, and that the court can redress such injury. Id; see, also,Ohio State Pharmaceutical Assn. v. Wickham (1989),61 Ohio App.3d 488, 493. As this court explained:
 The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented. Standing is a threshold test that, if satisfied, permits the court to go on to decide whether the plaintiff has a good cause of action and whether the relief sought can or should be granted to plaintiff. * * * The standing doctrine requires that a litigant have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult * * * questions." Williams v. Ohio State Attorney General
(Apr. 30, 1998), Franklin App. No. 97AP-980, unreported, quoting Baker v. Carr (1962), 369 U.S. 186, 205.
Here, the trial court found plaintiff lacked standing to assert the claim of a third party, Beth Jacob. A decision of an administrative agency properly is challenged by exhausting available administrative remedies and then appealing the decision to the common pleas court pursuant to R.C. 119.12. Beth Jacob, the applicant for a bingo license, failed to do so, and plaintiff could not stand in its place to pursue that procedure. Contrary to defendant's assertions, however, plaintiff's declaratory judgment action, as decided in the trial court, does not attempt to assert Beth Jacob's rights, but instead seeks judicial construction of R.C. 2915.09(D) pursuant to the declaratory relief provisions of R.C. Chapter 2721. See Freedom Rd.Found. v. Ohio Dept. of Liquor (1997), 80 Ohio St.3d 202,204.
R.C. 2721.03 authorizes declaratory relief regarding the interpretation of a statute, and states that "[a]ny person * * * whose rights, status, or other legal relations are affected by a * * * statute * * * may have determined any question of construction or validity arising under such * * * statute * * *." An action for declaratory relief requires (1) a real controversy between parties, (2) a controversy which is justiciable in character, and (3) a situation where speedy relief is necessary to preserve the rights of the parties. Williams v. Akron
(1978), 54 Ohio St.2d 136, 144. Construction and interpretation of statutes is a recognized function of declaratory action. SeeAmerican Life Accident Ins. Co. of Kentucky v. Jones
(1949), 152 Ohio St. 287.
Plaintiff argues, and the trial court held, that it has standing to file the present suit because defendant's interpretation of "premises" injured plaintiff by preventing it from entering into a lease with Beth Jacob and other potential charitable lessors. "The right to contract is specifically guaranteed by Section 1, Article I of the Ohio Constitution and is within the protection of the Fourteenth Amendment to the United States Constitution. It is a property right. Clevelandv. Clements Bros. Constr. Co. (1902), 67 Ohio St. 197. Similarly, an interest in a contract has been held to be a property interest. Akron v. Pub. Util. Comm. (1933),126 Ohio St. 333." Joseph Bros. Co. v. Brown (1979), 65 Ohio App.2d 43,46.
Joseph Bros. involved a landlord who rented its premises to different charitable organizations to run bingo games. After the leases were entered into, The Ohio Charitable Bingo Act found in R.C. Chapter 2915, the same statutory scheme involved here, was enacted. Because the Act limited the landlord's ability to rent its various premises to all of the organizations with whom it had leases before enactment of the statutes, the landlord filed a declaratory judgment action challenging the constitutionality of the new statutes. In finding the landlord to have standing, the court of appeals stated, "[t]here is no question that enforcement of these provisions interferes substantially with appellant's rights under the contract." Id. at 46. The court concluded that the landlord thus had a property interest under the terms of the leases sufficient to give it standing to attack the statutes and to allow the constitutional challenges to the Act. Here, too, defendant's interpretation of "premises" substantially interfered with plaintiff's ability to consummate its lease with Beth Jacob and continues to inhibit plaintiff's ability to enter into leases with a whole class of potential lessors: charities that desire to run a bingo game on the premises.
Similarly, Freedom Road Foundation ("Freedom Road") filed a declaratory action against the Department of Liquor Control seeking an interpretation of R.C. 2915.02(D). See Freedom Rd.Found., supra. Freedom Road was a charitable organization that used liquor permit owners to sell "tip tickets," similar to lottery instant tickets, on their premises. The Liquor Control Department cited the permit holders, but not Freedom Road, for violations of Ohio Adm. Code 4301:1-1-53 ("Regulation 53") arising out of the sale of the tickets. While Regulation 53 authorized the sale of such lottery schemes at liquor permit premises when the game was conducted in "strict compliance" with R.C.2915.02(D), the citations were based on the department's interpretation of Regulation 53's strict compliance language. Freedom Road's declaratory judgment action sought a ruling that the sale of tip tickets, as conducted, was permitted under R.C.2915.02(D).
The department initially contended Freedom Road did not have standing to file the declaratory action because the department enforced the regulation and cited the permit holders, not Freedom Road. The Supreme Court found Freedom Road had standing to file the suit even though the department took no action against Freedom Road:
 By requesting a declaratory judgment, however, Freedom Road is not directly challenging any particular administrative order of the department. Freedom Road would have no standing to make such a challenge. Instead, Freedom Road seeks judicial construction of R.C. 2915.02(D). Judicial construction of R.C. 2915.02(D), while having no direct effect on the department's administrative orders, will resolve whether the department has correctly interpreted that statute in finding a violation under Regulation 53. Id. at 204.
Here, too, plaintiff seeks a judicial construction of a portion of R.C. Chapter 2915, and under the rationale of Freedom RoadFound., has standing to do so.
As did Freedom Road, plaintiff meets all of the requirements ofWilliams. For a "controversy" to exist there must be a "genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Wagner v. Cleveland (1988),62 Ohio App.3d 8, citing Burger Brewing Co. v. Ohio LiquorControl Comm. (1973), 34 Ohio St.2d 93, 97. Plaintiff and defendant here have adverse legal interests in the present suit. Plaintiff claims that different units in one building each may be leased out to run charitable bingo games. By contrast, defendant contends that all the units of the buildings are the same premises.
Secondly, the issue of justiciability asks whether the controversy has the necessary "ripeness" for review. BurgerBrewing Co., supra. In determining whether a controversy is justiciable in character, the following two-fold test has been developed: "[f]irst to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage." Toilet Goods Assn. v. Gardner (1967),387 U.S. 158, 162; Haley v. Holderman (Mar. 13, 1997), Franklin App. No. 96AP-1019, unreported.
The issue here is ready for judicial resolution. The interpretation of the statute has a present and direct effect on plaintiff's contract rights, a right that is protected by law.Joseph Bros., supra; Burger Brewing Co., supra, at 98 (finding declaratory relief proper when the right affected in the case "constitutes a valuable property right protected by law"). Moreover, plaintiff has suffered a definite hardship and injury in not being able to rent its properties to Beth Jacob or any other member of a distinct class of lessors. Further, because plaintiff has been and is still unable to enter into leases with this distinct class of lessors because of defendant's interpretation of "premises," speedy relief is necessary to preserve plaintiff's right to contract. Plaintiff has fulfilled the declaratory action requirements of Williams.
Defendant nonetheless contends that because she never formally determined to refuse Beth Jacob's application to operate a bingo game at 3866 Linden, no controversy exists between the parties. In the zoning context, a prerequisite to finding an actual controversy in a declaratory judgment action is a final decision concerning the application of the regulation at issue to the specific property in question. Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 16. Outside of that context, defendant has not shown any support for her proposition that any such requirement is necessary for a declaratory action to proceed.
However, even if such a prerequisite exists in this context, defendant admitted in her answer to plaintiff's complaint that "its refusal to grant an amendment (of Beth Jacob's application) is based on the interpretation of the term `premises' as used in Chapter 2915." Moreover, during oral argument in this appeal, defendant's counsel stated that defendant informed Beth Jacob defendant would not approve of the amendment because one bingo game already was being conducted on the premises. At that point, Beth Jacob gave up seeking a license to conduct a bingo game at plaintiff's building and instead received a license to operate its bingo game at another address.
"The necessity [of the final decision requirement] is to pinpoint the final position of the decision-maker. Neither repeated applications and denials nor patently fruitless measures to obtain relief are required." Karches, supra, at 17. By her answer and her telling Beth Jacob she would not approve its application, defendant took a definite position on interpreting the statute in question, and consequently whether she would grant or deny Beth Jacob's application. Although defendant's decision was not "formal," it nonetheless is sufficient to meet the final decision element, which simply requires that defendant take a definitive position which adversely affects plaintiff's interests. Karches, supra,
at 15 ("Denial by the city of a specific proposed use is not necessary to a finding that the city has taken a final definitive position sufficient to satisfy the test of ripeness");Perrico Property Sys. v. Independence (1994), 96 Ohio App.3d 134,139-140 (finding declaratory action proper when city council adopted ordinance which would have affected plaintiff's property but that city voters later rejected); Home BuildersAssn. of Dayton v. Beavercreek (Oct. 23, 1998), Greene App. No. 97-CA-113, unreported, appeal granted (1999), 85 Ohio St.3d 1409.
In the final analysis, defendant's interpretation of "premises" adversely affected plaintiff's rights, plaintiff has shown a sufficient stake in the outcome of the controversy, and plaintiff has demonstrated it suffered a specific injury as a result of defendant's interpretation. Plaintiff has standing to file a declaratory action and, accordingly, defendant's first and second assignments of error are overruled.
Defendant's third assignment of error contends the trial court erred in interpreting "premises." After analyzing the ordinary meaning of the word and the legislative intent of R.C. Chapter 2915, the trial court ultimately held that each different address in plaintiff's building was a separate "premises" for purposes of the statute, and plaintiff could lease out each address for charitable bingo games.
In support of her assigned error, defendant asserts R.C. Chapter 2915 was intended to regulate and restrict the operation of bingo games in Ohio, and R.C. 2915.09(A)(3) was intended to eliminate full time bingo halls or mini-casinos by restricting the number of bingo games that may be played on one premises at any one time. Defendant further contends that because the public policy of Ohio has always been anti-gambling, the statute should not be interpreted to permit plaintiff to rent out the three separate units of one building. In response, plaintiff asserts that R.C. Chapter 2915 itself represents a departure from Ohio's anti-gambling position, and further contends because each unit in the building has a separate address and separate certificates of occupancy, each should be considered separate premises.
The paramount goal in the interpretation or construction of a statute is to ascertain and give effect to the legislature's intent in enacting the statute. Cline v. Bureau of MotorVehicles (1991), 61 Ohio St.3d 93, 96. Legislative intent is primarily determined from the language of the statute itself.Hamilton v. Hamilton (1988), 40 Ohio App.3d 190, 193. "Premises" is not defined in R.C. Chapter 2915, and in the absence of a statutory definition, the usual and ordinary definition of the word provides guidance. Brecksville v.Cook (1996), 75 Ohio St.3d 53, 56. The word should be read in context and construed according to the rules of grammar and common usage. Janovsky v. Ohio Bureau of Employment
(1996), 108 Ohio App.3d 690; R.C. 1.42.
One dictionary defines premises as: "2. * * * a. a tract of land including its buildings. b. a building together with its grounds or other appurtenances. c. the property forming the subject of a conveyance or bequest." Random House Dictionary of the English Language (2d ed. 1987) 1526. Another dictionary defines the word as "3. a. archaic: property that is conveyed by bequest or deed b: a specified piece or tract of land with the structures upon it c: a building, buildings, or part of a building covered by or within the stated terms of a policy (as in fire insurance) d: the place of business of an enterprise or institution." Webster's Third New International Dictionary (1966) 1789; see, also, The American Heritage Dictionary of the English Language (1981) 1034 ("3. Plural a. Land and the building upon it. b. A building or part of a building"). Black's Law Dictionary further defines premises as:
 * * * In estates and property. Lands and tenements; an estate, including land and buildings thereon; the subject matter of a conveyance. * * * The area of land surrounding a house, and actually or by legal construction forming one enclosure with it. A distinct and definite locality, and may mean a room, shop, building, or other definite area, or a distinct portion of real estate. Land and its appurtenances. Black's Law Dictionary (5 Ed. 1979) 1063.
By those definitions, "premises" easily may refer to portions of plaintiff's building.
As to defendant's anti-gambling argument, the early public policy of the state of Ohio was ardently anti-gambling. SeeMills-Jennings of Ohio, Inc. v. Department of LiquorControl (1982), 70 Ohio St.2d 95, 100. "This entire concept was dramatically changed by the state which, through its own initiative, significantly contributed to the weakening of the clear and long-standing anti-gambling public policy in Ohio."Id. at 100-101. Specifically, with the enactment of R.C. Chapter 2915, the state modified the public policy of Ohio and allowed charitable bingo games to operate. See, also, Statev. Lauer (July 14, 1982), Stark App. No. CA-5841, unreported (noting the change in public policy in regard to gambling after R.C. Chapter 2915 passed). While the public policy of Ohio is not as anti-gambling as it once was, charitable bingo games are highly regulated. See R.C. 2915.08 to 2915.10; Section 6, ArticleXV, Ohio Constitution. The intent of the legislature in adopting those statutes, including R.C. 2915.09(D)(3), was to implement regulations on the new legalized form of gambling, charitable bingo games.
Nonetheless, courts must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise and to which the General Assembly has delegated the responsibility of implementing the legislative command. State v. Cooper (1997), 120 Ohio App.3d 284,290, citing Swallow v. Indus. Comm. (1988),36 Ohio St.3d 55, 57. Evidence presented to the trial court, however, demonstrated defendant's own different views on what "premises" means.
Plaintiff presented pictures of a building in Columbus, Ohio that had been separated into many different units, each with a different address and with different occupancy certificates. Five different addresses in the building had been granted licenses to operate charitable bingo games. Defendant's allowing the many different addresses of that building to operate charitable bingo games undermines defendant's assertion here that R.C.2915.09(A)(3) was designed to prevent "mini-casinos" from being created when, in fact, defendant has allowed such "mini-casinos" to operate in other places.
In the final analysis, although the intent of R.C. 2915.09 is to regulate and control charitable bingo games, the usual and ordinary meaning of the word "premises" indicates that the word may refer to both a building or a portion of a building. A four-unit condominium with a common entrance and hallway is not one premises: each unit in such a building constitutes a separate premises. Similarly, the trial court did not err in interpreting "premises" to refer to a subdivision of a building which has been assigned its own address and issued its own certificate of occupancy permit. Defendant's third assignment of error is overruled.
Defendant's fourth assignment of error alleges the trial court erred in granting a protective order to plaintiff. In October 1998, defendant served on plaintiff a request for the production of documents. In response, pursuant to Civ.R. 26(C) plaintiff sought a protective order, alleging the requests were an annoyance and an undue burden and expense. In a decision dated January 22, 1999, the trial court granted in part and denied in part plaintiff's motion. Of the eleven requests for documents, the trial court required plaintiff to provide responses to two, finding the other requests were either not relevant, unduly burdensome, unlikely to lead to the discovery of relevant evidence, or overly broad and vague.
Civ.R. 26(B) provides that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." "In order for discovery to be allowed, relevance to the underlying subject matter must be shown. While the scope of relevance in discovery is broad, it is not limitless." Freeman v. Cleveland ClinicFound. (1998), 127 Ohio App.3d 378, 388 (citations omitted). The test for relevancy under Civ.R. 26(B)(1) is much broader than the relevancy test utilized at trial. Documents are only irrelevant at the discovery stage when the information sought will not reasonably lead to the discovery of admissible evidence.Id., quoting Tschantz v. Ferguson (1994),97 Ohio App.3d 693, 715; Icenhower v. Icenhower (Aug. 14, 1975), Franklin App. No. 75AP-93, unreported.
Civ.R. 26(C) allows the trial court to grant protective orders regarding discovery in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. The decision to grant or deny a protective order is within the trial court's discretion. Ruwe v. Bd. Of Springfield Twp.Trustees (1987), 29 Ohio St.3d 59, 61; Howell v. DaytonPower Light Co. (1995), 102 Ohio App.3d 6, 15. A decision granting or denying such an order will only be reversed upon a showing that the trial court abused its discretion.
The trial court did not abuse its discretion in granting plaintiff's motion for a protective order. Plaintiff's complaint raised a single issue: the definition of "premises." Defendant's first, second, and third requests all sought documents relating to the creation and composition of plaintiff's partnership. The fourth request sought documents concerning plaintiff's obtaining title to the properties in question. Requests eight and eleven sought documents concerning plaintiff's business relationships with other charities that operate charitable bingo games. Defendant's ninth and tenth requests sought tax and other financial documents from 1995 to the present. The trial court did not abuse its discretion in finding those requests irrelevant; how those requests could lead to any admissible evidence on the definition of "premises" is unexplained.
Finally, defendant's seventh request sought "all documents between the plaintiff and the defendant Beth Jacob Synagogue and any individual affiliated with Beth Jacob Synagogue." The trial court found the request to be overly broad and vague because the request had no limitations. Defendant does not explain how the court's decision is an abuse of discretion, and we see none.
Defendant's fourth assignment of error is overruled.
Having overruled defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
LAZARUS and KENNEDY, JJ., concur.